UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MCKAYLA L. KUNICK and
CHRISTOPHER J. PEARCE,

        Defendants.

_____/

Case No. 2:20-cr-00011

Hon. Maarten Vermaat
U.S. Magistrate Judge

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    Introduction

The Government charged Defendants McKayla Kunick and Christopher Pearce with theft from an Indian gaming establishment, and aiding and abetting such theft, in violation of 18 U.S.C. §§ 1167(a) and 2(a).  (ECF No. 3 (Class A Misdemeanor Information).)  Pursuant to a stipulation, the parties agreed to facts that satisfy every element of this except for one element:  the requirement that the Government prove beyond a reasonable doubt that the stolen money, funds or property *belonged to* the Indian gaming establishment.  (ECF No. 60.)  The parties consented to a bench trial before a U.S. Magistrate Judge to resolve this issue and then, based on this decision, either convict or acquit the Defendants.

On March 31, 2021, the Court conducted this bench trial.  (ECF No. 69.)

## II.    Additional Relevant Procedural History

The Government filed its Class A Misdemeanor Information on June 12, 2020. (ECF No. 3.)

On September 8, 2020, Defendants made their first appearance before the Court and were arraigned.  (ECF No. 11.)  Both stood mute and the Court entered not-guilty pleas on their behalf.  (*Id.*)

In early February 2021, Defendants consented to proceed to trial before a U.S. Magistrate Judge and also waived their right to a jury trial.  (ECF Nos. 49, 50.)  The Court then approved these consents and waivers.  (ECF No. 51.)

On February 18, 2021, the Court held a status conference.  (ECF No. 54.)  At the conference, the parties agreed to a bench trial on one element of the case because the Defendants would stipulate to facts that would satisfy all remaining elements.

On March 12, 2021, the parties filed a joint stipulation as to facts that would satisfy every element of the charges against the Defendant except for one: whether the money, funds or property of value *belonged to* the establishment operated by or for or licensed by an Indian tribe.  (ECF No. 60.)

On March 24, 2021, each party filed a trail brief.  (ECF Nos. 61, 62, and 63.) Kunick's trial brief stated, in relevant part, that she is not guilty of the charge "because she did not abstract, purloin, willfully misapply or take and carry away with the intent to steal property *belonging to a gaming establishment ran by an Indian tribe.*" (ECF No. 62, PageID.97 (emphasis added).)

2

The Court scheduled the final pretrial conference for March 25, 2021.  (ECF No. 5.)  Defendant Pearce failed to appear for this conference.  (ECF No. 65.)  Accordingly, the Court adjourned and rescheduled the final pretrial conference, but conducted an on-the-record conference with the attorneys to discuss the remaining legal issues.  (*Id.*)  During the conference, the Court asked whether the parties had found a legal definition for the phrase "belonging to" or "belong to."  The parties indicated that they had not.  The Court then discussed the definition of "belong to" provided in *United States v. Aubrey*, 800 F.3d 1115, 1125 (9th Cir. 2015), a case in which the Ninth Circuit defined this phrase in the context of 18 U.S.C. § 1163, which criminalizes theft from an Indian tribal organization.  The parties stipulated that the *Aubrey* definition for "belonging to" or "belong to" should be used in this case.

The Government's trial brief stated the elements of the offenses at issue in this case.  First, the Government listed the elements the Government would have to prove to convict someone of a violation of 18 U.S.C. § 1167(a).  According to the Government, the elements are:

> First, the defendant abstracted, purloined, willfully misapplied or took and carried away;
> Second, moneys, funds, or other property of a value of $1,000 or less;
> Third, belonging to a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission; and
> Fourth, with the intent to steal.

(ECF No. 63, PageID.101.)

3

In addition, the Government listed the elements the Government would have to prove to convict someone of aiding and abetting the commission of a violation of 18 U.S.C. § 1167(a).

> First, that the crime of theft less than $1,000 in money or other property from a gaming establishment on Indian lands was committed;
>
> Second, the defendant helped to commit the crime; and
>
> Third, the defendant intended to help commit the crime.

(*Id.*, PageID.102.)

The Defendants' trial briefs did not dispute these elements.

The Court conducted a final pretrial conference, on the record, with both Defendants present on March 30, 2021.  (ECF No. 68.)  During the conference, the parties again discussed the *Aubrey* definition for "belonging to" and again stipulated that the definition in *Aubrey* should be used in this case.

## III.    Summary of the Parties' Joint Stipulation

In their stipulation, the parties agreed to facts that established each of the aforementioned elements except the requirement that the money, funds or property belonged to the Indian gaming establishment.  (ECF No. 60.)  In the stipulation, the Defendants again stated their request for a bench trial as to the one remaining issue.

> 9.    That the defendants are requesting a bench trial on the sole issue of whether the money, funds, or other property abstracted, purloined, and taken and carried away by Kunick and Pearce belonged to the Ojibwa Casino or to the individual players' card holders.

(*Id.*, PageID.92.)

4

The stipulation confirmed (1) that the Ojibwa Casino is a gaming facility operated by or for or licensed by the Keweenaw Bay Indian Community (KBIC) pursuant to an ordinance or resolution that was approved by the National Indian Gaming Commission, and (2) that the Ojibwa Casino facility is located in Baraga County, Michigan, and within the exterior boundaries of the KBIC reservation.  (*Id.*, PageID.91.)

The stipulation also set forth the method by which the theft took place.  The stipulation stated that, during the first half of 2017, Kunick was employed by the Ojibwa Casino in the guest services department.  (*Id.*, PageID.92.)  As part of her duties, Kunick would assist patrons open a players club account and assist patrons with existing accounts.  (*Id.*)  Due to Kunick's position, she was able to determine when a Players Club card had free play credits available.  (*Id.*)  After identifying available free play credits, Kunick would reset players' accounts and print duplicate cards.  She would then provide Pearce with the duplicate cards.  (*Id.*)

Once Pearce possessed the cards, he would use the free play credits at authorized slot machines within the Ojibwa Casino.  Through this process, Kunick and Pearce obtained and used a total of $682.00 worth of free play credits.  (*Id.*)  Ultimately, Defendants admitted that they "abstracted, purloined, and took and carried away with the intent to steal, and aided and abetted the abstraction, purloining, and taking and carrying away with the intent to steal, money and property of value less than $1,000."  (ECF No. 60, PageID.92.)

## IV.    Applicable Law

Tile 18, United States Code Section 1167(a), states:

> Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value of $1,000 or less belonging to an establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined under this title or be imprisoned for not more than one year, or both.

18 U.S.C. § 1167(a).  In order to convict a person of this offense, the Government must prove beyond a reasonable doubt, or the parties must stipulate, that the defendant (1) abstracted, purloined, willfully misapplied or took and carried away; (2) moneys, funds, or other property of a value of $1,000 or less; (3) belonging to a gaming establishment operated by, operated for, or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission; (4) with the intent to steal.

Title 18, United States Code, Section 2(a), provides as follows:  "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  In order to convict a person of this offense, the Government must prove beyond a reasonable doubt, or the parties must stipulate, (1) that the crime of the crime of theft from an Indian gaming establishment was committed, (2) that the defendant helped to commit the crime, and (3) that the defendant intended to help commit the crime.  *Sixth Circuit Criminal Pattern Jury Instructions*, Instruction 4.01 (March 25, 2021).

The basic elements of the offenses in this case are not in dispute.

As noted above, the sole issue remaining before the Court is whether the money, funds or property belonged to the Ojibwa Casino ("the Casino"). Courts have not squarely defined the term "belonging to" under 18 U.S.C. § 1167(a). The Ninth Circuit, however, did define the phrase in the context of a similar statue, 18 U.S.C. § 1163, which criminalizes theft from an Indian Tribal organization. In *United States v. Aubrey*, the Ninth Circuit noted that "'[b]elong' is commonly defined as 'to be the property of a person or thing.'" 800 F.3d at 1125 (citing *Webster's New International Dictionary* (3rd ed. 1993) and *Black's Law Dictionary* (9th ed. 2009)). The Ninth Circuit concluded that to show that funds continue to belong to the Indian tribe, the Government must show that "the tribe maintains 'title to, possession of, or control over them.'" *Id.* at 1126 (quoting *United States v. Kranovich*, 401 F.3d 1107, 1113 (9th Cir. 2005)); *see also United States v. Von Stephens*, 774 F.2d 1411, 1413 (9th Cir. 1985) (holding that funds distributed by an Indian tribe will continue to belong to the tribe if the tribe "exercises supervision and control over the funds and their ultimate use").

During the March 25, 2021 status conference and March 30, 2021 final pre-trial conference, the parties stipulated to the *Aubrey* definition of "belonging to" as the correct and controlling definition. (ECF Nos. 65, 68.) Accordingly, the Court applies the definition.

## V.    Summary of the Evidence

The only witnesses presented was Amanda Sauvola, former Ojibwa Casino promotion manager, and Don Messer, Ojibwa Casino manager.

### a.  Testimony of Amanda Sauvola

Sauvola testified that during 2017, she was Ojibwa Casino's promotion manager.  In this role, she oversaw promotions that were designed to incentivize gamblers to come to the Casino and play.  Among the promotions offered by the Casino was the free play credit system.  Free play is credit that a member of the Players Club could use at specific slot machines in the Casino.

To partake in the free play credit system, a player would need to become enrolled in the Players Club.  To do this, the player would provide the Ojibwa Casino with a form of photograph identification and other personal information.  After taking the player's information, the Ojibwa Casino would create an account for the player and issue the player a Players Club card.

Sauvola said that the Ojibwa Casino operated two different facilities: a Marquette facility and a Baraga facility.  Each facility employed the Players Club card system, but each casino issued separate cards.  In short, a Players Club card issued by the Marquette facility could only be used at the Marquette facility and vice versa.

To use the card, the player would need to create a PIN number for his or her card that only he or she knew.

Each week, the Casino would mail the player a notice with how much free play credits would be available on his or her Players Cub card for that week.[1]  If free play

---

[1]      During cross-examination, Sauvola said that an amount of predetermined free play credits would be predetermined before the issuance of Players Club card.

credits were not used within the week, the free play credits would expire.  The amount of free play credits issued to a player depended on the amount of time and money the player spent in the Casino.

Sauvola went on to explain how the Casino restricts players' use of free play credits.  First, the Casino can withdraw a player's free play credits or cancel the free play credit system at any time.  Second, only the player issued the Players Club card may use the card and the free play credits on the card.  Third, the Players Club cards cannot be used outside of the Ojibwa Casino facility that issued the card.  Fourth, a player's free play credits may neither be transferred to another player's account nor used by another player.  Fifth, free play credits cannot be redeemed for cash.  Sixth, free play credits cannot be redeemed for prizes and benefits, like food or a hotel stay.  And seventh, the free play credits may *only* be used at authorized slot machines.

Despite Sauvola's statements regarding the Casino's on-going control, she described the free play credits as a "Christmas gift."  Sauvola added that over the course of her five years as Ojibwa Casino's promotion manager, she never saw the Casino withdraw a player's free play credits unless there was an accounting error as to the number of credits given to the player.  Sauvola further stated that apart from the PIN number to use a card, the authorized slot machines do not possess any extra protection to prevent unauthorized use of another's Players Club card and free play credits.

Sauvola identified and laid the foundation for Government exhibits 1(a), 1(b), 2(a), and 2(b).  These exhibits were admitted into evidence without objection.  (ECF

No. 69, PageID.110.)  The exhibits were photographs of the free play cards issued by the Marquette and Baraga casino facilities.  Exhibits 1(a) and 1(b) were the front and back of the Marquette card and exhibits 2(a) and b(b) were the front and back of the Baraga card.

### b. Testimony of Don Messer

Messer testified that he had been employed at the Ojibwa Casino for over 30 years.  During 2017 and continuing to the date of trial, Messer was the Casino manager.  In his position, he overaw the day-to-day operations of the Casino.  His duties included the oversight of how the free play credit system is budgeted and implemented.

During the Government's case-in-chief, Messer explained that the size of the free play credit system is a budgeting decision.  As a budgeting decision, the Casino treats money set aside for the free play credit system as money unavailable for the Casino's other operations.  Moreover, the Casino tracks the free play credits to know the number of credits used in total and by which individual players.

Messer added that the Casino does more than simply track the number of free play credits used at the authorized slot machines. For tax reasons, the Casino separates free play credits used at slot machines from a player's own money being used to play.  According to Messer, the Casino does not treat free play credits as taxable income for players.  In addition, the use of free play credits does not constitute income for the Casino. According to Messer, the slot machines count free play credits and players' money as revenue whenever either are used to play.   The Casino

subtracts the amount used from the revenue calculated by the slot machines.  The players' money used to play, however, is counted as revenue and is taxable.

On cross-examination, Messer stated that the Casino does not control when or even whether a player will use free play credits.   He also said that free play credits on a Players Club card may only be accessed by a person with the card's PIN number. Without the PIN number, an unauthorized user may only add Casino points[2] but cannot take free play credits or Casino points out of the authorized player's account.

At the conclusion of Messer's testimony, he stated that free play credits were the player's credits.

## VI.    Analysis and Findings of Fact

As explained in *Aubrey*, the issue of whether money, funds or property belong to another is determined by the degree of control that the person or entity – in this case, the Casino – exercises over the money, funds or property.  *Aubrey*, 800 F.3d at 1125-26.  Even property or funds distributed by an Indian tribe may still belong to the Indian tribe if the tribe maintains control over the property and funds.  *Id*. at 1126 (citing *Von Stephens*, 774 F.2d at 1413).

Defendants argued that the free play credits they stole were essentially gifts to the legitimate Players Club card holders and, accordingly, that the free play credits did not belong to the Casino.  The Court disagrees with this assertion.  "The word 'gift' is usually defined as a voluntary transfer of property by one to another without

---

[2]    Both witnesses explained that casino points are a part of a different promotion also operated through the use of the Players Club card.

any consideration or compensation therefor." *Comm'r v. Montague*, 126 F.2d 948, 951 (6th Cir. 1942).  Here, according to the testimony, the Casino clearly obtained something of value by distributing free play credits to players via the Players Club system.  The Casino obtained (1) the players' presence not only in the Casino but also at a slot machine, and (2) the players' involvement in gambling.  Stating the obvious, the Casino got something of value to it by distributing free play credits.

The issue here is the degree of control that the Casino had over the free play credit on the Players Club card.  In this case, the evidence shows that the Ojibwa Casino maintained significant control over the free play credits stolen by Defendants. Sauvola explained all the different ways the Casino controlled the use of free play credit.  She testified:

- that the Casino can withdraw a player's free play credits or cancel the free play credit system at any time,

- that free play credit is not transferrable,

- that Players Club cards cannot be used outside of the Ojibwa Casino facility that issued the card,

- that free play credits cannot be redeemed for cash,

- that free play credits cannot be redeemed for prizes and benefits, like food or a hotel stay, and

- that the free play credits may *only* be used at authorized slot machines.

In addition, the Players Club cards state on the backs of the cards – admitted Government exhibits 1(b) and 2(b) – that the authorized users' physical possession of the cards indicates that they have accepted "all of the players club policies."  The cards further say that they are the property of the Ojibwa Casino, hat the cards are non-transferable and only useable by the authorized user, and that the Ojibwa Casino "reserves the right to alter or cancel promotions at any time."  The exhibits are shown below.



(Government Exhibit 1(b).)



You are a valued player!
Your use of this card indicates your acceptance of all player club policies.
This card is the property of Ojibwa Casino, is non-transferable,
and may only be used by the person named on the card.
Ojibwa Casino reserves the right to alter or cancel promotions at any time.
Must present a valid I.D. for transactions.  Must be 18 years of age or older.

Ojibwa Casino & Resort | Baraga | 800-323-8045
OjibwaCasino.com

(Government Exhibit 2(b).)

Sauvola and Messer testified that the Ojibwa Casino had the ability to withdraw a players' free play credits, alter the free play credit system, or terminate the free play credits system at any time.  Essentially, the Casino maintained control over the free play credits taken by Defendants though its ability to alter or terminate the free play credit system whenever it chose to do so.

Moreover, Messer's description of the tax consequences of providing free play credits to players confirmed that the credits belonged to the Casino.  When a player used free play credits in an authorized slot machine, the casino subtracted the free play credits from its revenue stream for tax reasons.  In other words, the Casino did not treat the use of free play credit as income.  In contrast, as Messer explained, when players used their own money and not the free play credits, the Casino counted the money as revenue.  In addition, according to Messer, the Casino did not treat free play credits as income for the player who received them.  The Casino's conduct

indicates that the free play credits – although distributed to authorized players' accounts – were viewed by the Casino as if they belonged to the casino.

As noted above, the question here is the degree of control the Casino exercised over the free play credit on Players Club cards.  The evidence established that free play credit is totally different from cash that can be spent anywhere for anything. Ultimately, the Casino maintained significant control over the free play credit on the Players Club cards.

## VII.   Conclusion

For the above reasons, the Court finds that the Government has proven beyond a reasonable doubt that the stolen free play credits on the Players Club cards belonged to the Ojibwa Casino.


Dated:   April 9, 2021                              /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE